**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Cristina Miller, | No. CV-19-03397-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Arizona Public Service Company, | |
| Defendant. | |

Pending before the Court is the parties' joint notice of discovery dispute. (Doc. 54.) Although Plaintiff's portion of the joint notice is not a model of clarity, she appears to be raising three different issues: (1) a challenge to Defendant's "objections and withholding of documents to Plaintiff's RFPs No. 1, 2, 7, 10, 14, 18, 19, 21, [and] 25"; (2) a challenge to the search methodology Defendant used when searching for responsive documents; and (3) a challenge to Defendant's redaction of one memorandum and three emails based on the attorney-client privilege. (*Id.* at 2-5.) Each issue is addressed below.

1. Response to RFPs. Plaintiff devotes only one sentence to her first challenge. After noting that Defendant raised various objections to some of her RFPs and withheld documents based on those objections, she asserts that Defendant's conduct was improper because the objections were "boilerplate." (*Id.* at 2.) In response, Defendant states that it has "repeatedly clarified it has not withheld any relevant and responsive documents except those listed on its privilege log and post-litigation privileged communications." (*Id.* at 8 n.2.)

Given this explanation, it doesn't appear there is any dispute for the Court to resolve. The parties have separately briefed whether Defendant's privilege assertions were appropriate—which is discussed in Part 3 *infra*—and Defendant states without contradiction that it only relied on its privilege assertions when withholding documents.

If this understanding is incorrect, the parties may, after meeting and conferring, file another joint notice that addresses, with more clarity, the precise nature of their dispute concerning RFPs No. 1, 2, 7, 10, 14, 18, 19, 21, and 25.

2. <u>Search Methodology</u>. Plaintiff next challenges "the reasonableness of Defendant's search for emails, outlook calendar invites and other documents in response to Plaintiff's RFPs." (*Id.* at 2.) Plaintiff states that Defendant's search method was "to instruct individual employees to run a search of their own email accounts and produce relevant documents" and contends that Defendant should be "require[d] . . . to utilize one of the many IT professionals currently employed by the Company to run a complete search of the server utilizing the requested search terms." (*Id.* at 2-3.) As proof of the inadequacy of Defendant's previous search efforts, Plaintiff notes that (1) Defendant recently produced 80 additional emails, which shows the initial search was under-inclusive, and (2) during recent depositions, some of Defendant's employees alluded to documents that have not been produced during discovery. (*Id.*)

Defendant raises several arguments in response. First, Defendant argues that Plaintiff forfeited the right to challenge its search methodology because Plaintiff didn't raise any concerns about that methodology during the parties' Rule 26(f) conference and instead "unjustifiably waited until 11 days before the discovery deadline to raise e-discovery issues." (Doc. 54 at 7-8.) Second, Defendant defends the sufficiency of its search efforts, arguing that it "conducted numerous proportional and thorough searches" and ended up producing nearly 900 pages of documents. (*Id.*) Third, Defendant accuses Plaintiff of mischaracterizing its employees' deposition testimony and provides direct quotations in which those employees voiced confidence in the thoroughness of their searches. (*Id.* at 8-9.) Defendant also contends the witnesses did not admit that additional,

undisclosed documents exist. (*Id.*) Fourth, Defendant argues its recent production of additional emails was the result of a previously unavailable database becoming accessible, not due to inadequate search efforts. (*Id.* at 9.)

The Court declines to order Defendant to essentially re-do its search for responsive documents at this late stage of the case. Rule 26(f)(3)(C) requires the parties to formulate a "Discovery Plan" at the outset of the case and to address, as part of this plan, "any issues about disclosure, discovery, or preservation of electronically stored information." Here, the parties represented in their Rule 26(f) report, filed in August 2019, that "[t]he parties do not have any issues relating to preservation, disclosure, or discovery of electronically stored information." (Doc. 14 at 7.) There is no suggestion that Defendant somehow misled Plaintiff, during the Rule 26(f) process, about its planned methodology for searching for responsive documents. Instead, it appears that Plaintiff allowed Defendant to pursue that methodology without objection for a year and then belatedly raised complaints about the sufficiency of that methodology on the eve of the discovery cutoff. This is not how the discovery process is supposed to work, particularly when it comes to ESI. *See, e.g., Hardin v. Mendocino Coast Dist. Hospital*, 2019 WL 4256383, *2 (N.D. Cal. 2019) (overruling plaintiff's objection to defendant's ESI search protocol in part because it was raised too late in the case: "Rule 26 requires the parties to meet and confer about ESI at the beginning of discovery. This is important because proposed search terms often must be tested and refined. Custodians are usually negotiated – both who they are and how many. . . . This is all the more reason why it's important to comply with Rule 26's requirement to start meeting and conferring about ESI at the outset of discovery. . . . [T]his is happening too late. It's too late to start a negotiation over how many custodians' emails will be searched.").

Plaintiff has also failed to demonstrate an entitlement to relief on the merits. Defendant has already identified and produced hundreds of documents, the search methodology Defendant used to identify those documents seems reasonable and proportional given the nature of this case, and the cited portions of deposition testimony,

when read in proper context, do not raise the inference that additional documents exist. Given all of this, Plaintiff can only speculate that the use of a different search methodology *might* lead to the discovery of additional responsive documents. This sort of speculation is insufficient to trigger discovery relief. *See, e.g., Happy Place, Inc. v. Hofesh, LLC*, 2019 WL 4221400, *2 (C.D. Cal. 2019) (denying defendant's "request that a third-party vendor conduct HPI's collection, search, review, and production of responsive documents" because "Defendant's speculation that more documents must exist is no basis for a compulsory discovery order of any kind").

      3.    <u>Privilege Assertions</u>. In December 2019, Defendant produced four documents—one internal memorandum and three internal emails—that were redacted to remove references to attorney-client privileged communications. Plaintiff now challenges those redactions because (1) each communication was "drafted by and between non-attorneys," (2) Defendant's privilege log was insufficiently detailed, and (3) during recent depositions, the authors of the redacted documents admitted that the communications at issue did not pertain to legal advice. (Doc. 54 at 3-5.) In response, Defendant argues (1) Plaintiff's objections are untimely because the redacted documents were produced nearly a year ago, (2) the mere fact the communications were between non-attorneys is irrelevant, because "the attorney-client privilege and/or work product doctrine extends to intra-corporate communications among non-attorneys regarding legal advice or actions," and (3) the specific redactions at issue were appropriate because they involve high-level employees repeating legal advice they received from Defendant's legal department. (*Id.* at 6-7.)

On the one hand, the Court disagrees with Defendant's assertion that Plaintiff's challenge is untimely. Although Plaintiff received the redacted documents in December 2019, Plaintiff has plausibly explained that she had no reason to doubt the validity of Defendant's redactions until the recent depositions of the authors. The Court is satisfied that Plaintiff's subsequent efforts to seek relief were timely.

On the other hand, to the extent Plaintiff's position is that the redactions are categorically improper because they involve communications between non-attorneys, this

argument lacks merit. It is well established that "the privilege protects from disclosure communications among corporate employees that reflect advice rendered by counsel to the corporation. A privileged communication should not lose its protection if an executive relays legal advice to another who shares responsibility for the subject matter underlying the consultation. This follows from the recognition that since the decision-making power of the corporate client may be diffused among several employees, the dissemination of confidential communications to such persons does not defeat the privilege." *Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 160 F.R.D. 437, 442 (S.D.N.Y. 1995) (citations and internal quotation marks omitted).

The Court also rejects Plaintiff's challenge to the sufficiency of Defendant's privilege log. Under Rule 26(b)(5)(A), "[w]hen a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Here, for each redacted document, Defendant's privilege log expressly invoked the attorney-client privilege ("Nature of Privilege: A/C Privilege"), described the nature of the document (*e.g.,* "Draft Memorandum from Phil McLaughlin, dated October 11, 2018"), and provided enough information about the nature of the document to enable Plaintiff to assess the privilege assertion (*e.g.,* "discussing legal advice regarding Cristina Miller performance issues"). (Doc. 54 at 3-5.) Although Defendant perhaps could have done more to denote that the legal advice originated from its legal department and was subsequently relayed to various non-lawyer employees, the Court is unwilling to say the privilege log was so deficient as to constitute a waiver of the privilege. *Cf. Grand Canyon Trust v. U.S. Bureau of Reclamation*, 2010 WL 457397, *2 (D. Ariz. 2010) ("FWS has made a *prima facie* showing that the documents are privileged. It has submitted a privilege log identifying the attorney and client involved with each withheld document, the nature of each document, the date

the document was generated, and information on the subject matter of each document. . . . The Trust contends that FWS's privilege log is insufficient because it makes a blanket assertion that the withheld documents contain legal advice and never details the type or subject of legal advice. The Trust cites no authority holding that the lack of such detail defeats a *prima facie* showing of privilege.") (citations omitted).

With this backdrop in mind, the remaining question is whether Plaintiff is entitled to contest the substantive validity of Defendant's privilege claim—that is, to seek review of whether the redacted portions of the four documents actually reflect the dissemination of legal advice that came from Defendant's legal department. Under Ninth Circuit law, a party requesting *in camera* review of assertedly privileged documents must show "a factual basis sufficient to support a reasonable, good faith belief that *in camera* inspection may reveal evidence that information in the materials is not privileged." *In re Grand Jury Investigation*, 974 F.2d 1068, 1075 (9th Cir. 1992). Although this "evidentiary threshold" is "relatively minimal," it "must first be met by the party requesting review before the court may exercise its discretion." *Id.* at 1072. This is because "*in camera* review of documents . . . is an intrusion [into the attorney-client privilege] which must be justified." *Id.* at 1074. Thus, although the Court must engage in "[s]ome speculation" when assessing whether the evidentiary threshold is met, *id.* at 1073, the requesting party must show more than a "hunch" that the privilege claim is unfounded. *Cf. Reynolds v. Liberty Mut. Ins. Co.*, 2017 WL 6415360, *4 (D. Ariz. 2017) (party seeking *in camera* review "failed to make the requisite factual showing, instead hinging his argument on a hunch"); *Aerojet Rocketdyne, Inc. v. Glob. Aerospace, Inc.*, 2019 WL 1178635, *4 (E.D. Cal. 2019) (party failed to meet minimal threshold for *in camera* review of redacted material where it argued that most of the redacted information was not privileged because the redactions appeared to be "heavy handed" and "inconsistent").

If the requesting party makes the threshold showing, the decision whether to conduct *in camera* review is "within the discretion of the district court." *Grand Jury Investigation*, 974 F.2d at 1075. The exercise of this discretion, in turn, "is guided by the factors

enumerated in [*United States v. Zolin*, 491 U.S. 554 (1989)]." *Id.* Under *Zolin*, "[t]he court should make that decision [whether to conduct *in camera* review] in light of the facts and circumstances of the particular case, including, among other things, the volume of materials the district court has been asked to review [and] the relative importance to the case of the alleged privileged information." 491 U.S. at 572.

Here, the Court lacks enough information to complete the first-step inquiry. Plaintiff's position, in a nutshell, is that the authors of the redacted documents admitted during their recent depositions that the documents don't contain legal advice. Defendant disputes this characterization of the deposition testimony and argues the witnesses actually confirmed the documents contain legal advice. Unfortunately, neither party submitted the underlying deposition transcripts (due to the page limitations previously imposed by the Court), so the Court has no way of evaluating whose characterization is correct.

Accordingly, **IT IS ORDERED** that the parties' joint notice of discovery dispute (Doc. 54), to the extent it is construed as a motion to compel Defendant to produce more documents in response to certain RFPs and/or to re-run its document search, is **denied**.

**IT IS FURTHER ORDERED** that the parties must, after meeting and conferring, prepare a joint filing that includes the relevant portions of the deposition transcripts at issue and identifies, in highlighting (yellow for Plaintiff and green for Defendant), the particular testimony they view as supporting their position. The joint filing must be made by **October 9, 2020.**

Dated this 2nd day of October, 2020.

Dominic W. Lanza
United States District Judge